**Michael R. WOOD, individually and dba National Photo Services, Plaintiff-Appellant,**

v.

**SANTA BARBARA CHAMBER OF COMMERCE, INC., aka All Year Association, et al., Defendants-Appellees.**

**Nos. 81–5422, 81–5562.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 8, 1982.

Decided May 20, 1983.

---

Michael R. Wood, in pro. per.

Paul Giannini, Los Angeles, Cal., argued, for Santa Barbara; Myers & Widders, Ventura, Cal., McKay, Byrne & Udkovich, Michael A. Byrne, Los Angeles, Cal., Harold A. Donegan, Jr., Scottsdale, Ariz., on brief.

Before ANDERSON and NELSON, Circuit Judges, and PRICE *, District Judge.

NELSON, Circuit Judge:

This consolidated appeal has two parts. In No. 81–5422, Wood appeals from a district court summary judgment dismissing all his claims against all defendants. In No. 81–5562, Wood appeals from the grant of a permanent injunction prohibiting him from bringing any similar suit in any court. We uphold the dismissal in No. 81–5422 as to all claims. We uphold the injunction in No. 81–5562 insofar as it blocked the filing of contemporaneous parallel lawsuits and provided a future reinforcement for collateral estoppel.

---

* The Honorable Edward D. Price, United States District Judge for the Eastern District of California, sitting by designation.

1. This consolidated appeal stems from what may be called the third and fourth generation of lawsuits spawned by the prolixity of appellant Michael Wood. This court has previously traced the first two generations of Wood's *pro se* litigation. *Wood v. McEwen,* 644 F.2d 797, 799–800 (9th Cir.1981), *cert. denied,* 455 U.S. 942, 102 S.Ct. 1437, 71 L.Ed.2d 654 (1982).

2. Dismissing the copyright claims, the district court found that all but two of the alleged

## BACKGROUND

This appeal is the latest installment of ten years of litigation concerning photographs that were taken by the appellant in 1968 and that have been used in promotional advertisements for the City of Santa Barbara.[1] Wood filed the present action in the District of Nevada. His complaint made 18 claims, sounding in copyright, antitrust, fraud and conspiracy. He named 253 defendants, including the Santa Barbara Chamber of Commerce and every newspaper, magazine and publishing company carrying any advertising containing photographs taken by Wood for the Chamber of Commerce.

On December 15, 1980, the district court, 507 F.Supp. 1128, *sua sponte* dismissed all of Wood's claims against all 253 defendants. The district court relied primarily on the running of the statute of limitations and on its lack of *in personam* jurisdiction over most of the defendants.[2] The district court issued an amended version of its opinion on April 24, 1981.

On May 4, 1981 Wood submitted what he entitled "Plaintiff's Amended Motion [Rules 59(e) and 60(b)] to Alter or Amend Judgment and for leave to Amend Complaint [Rule 15(a)]." This motion contained several arguments but focused on elaborating Wood's claim that reproduction by microfilm companies hired by the publisher defendants was a continuous infringement sufficient to toll the statute of limitations. On June 1, the district court entered an order denying a variety of motions by Wood, including those contained in the May 4 document. On that same date, the dis-

infringers were protected by the statute of limitations. As to those two defendants, the district court found that there existed neither *in personam* competence under the Nevada long-arm statute, nor *in personam* jurisdiction compatible with due process. Similarly, the district court dismissed the antitrust claims by relying on lack of personal jurisdiction and non-joinder of indispensable parties. Finally, the district court dismissed Wood's fraud and conspiracy claims: two were barred by res judicata and two were without federal subject matter jurisdiction.

trict court also partially granted a motion by certain defendants for permanent injunctive relief from further legal action by Wood.

Wood initiated appeal No. 81–5422, his appeal from the April 24 amended judgment that dismissed his lawsuit, by filing a notice of appeal on May 26. Wood initiated appeal No. 81–5562, his appeal from the permanent injunction, by filing an amended notice of appeal on July 1.

## TIMELINESS OF APPEAL FROM SUA SPONTE DISMISSAL

In a civil action where neither the United States nor its officer or agent is a party, Federal Rule of Appellate Procedure 4(a) requires that notice of appeal be filed within 30 days after entry of judgment. Appellant Wood did not file his notice of appeal until May 26, 32 days after the amended judgment was entered on April 24. Nevertheless, because the final day of this 30-day appeals period fell on a Sunday and the next day was Memorial Day, Wood's appeal from the summary judgment dismissing his claims is timely. Fed.R.Civ.P. 6. We now turn to the merits of Wood's appeal.

## SUMMARY JUDGMENT

A trial court properly enters summary judgment if, viewing the evidence in the light most favorable to the adverse party, it finds "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment is therefore subject to *de novo* review by this panel. *Dosier v. Miami Valley Broadcasting Corp.,* 656 F.2d 1295 (9th Cir. 1981).

Appellant raises ten objections to the grant of summary judgment and to related rulings by the district court. The exact scope of each of these objections is unclear due to the style of appellant's briefs.[3] Nevertheless, we believe we can define the claims on appeal sufficiently to identify

those meriting our consideration. These claims fall into three catagories: procedural defects in the issuance of summary judgment, misapplication of the statute of limitations, and improper finding of no *in personam* jurisdiction.

1. *Alleged procedural defects in grant of summary judgment.*

Objecting to the procedures by which the district court issued its summary judgment, appellant points to two documents that the court below refused to consider: an affidavit in opposition to summary judgment and a motion to amend the complaint. We find that, given the tardiness with which each of these documents was submitted, the district court acted within its discretion in rejecting both.

■ Wood submitted his affidavit in opposition to the motion for dismissal on the day that motion was to be heard. This was a violation of Fed.R.Civ.P. 6(d), which provides that "opposing affidavits may be served not later than one day before the hearing, unless the court permits them to be served at some other time." Rule 6(b) allows for enlargement of time "upon motion" and for "excusable neglect." The record shows no motion below and no showing of excusable neglect, and appellant's briefs to this panel similarly give no excuse for the untimeliness. The district court therefore acted properly in striking Wood's affidavits. *See, e.g., Farina v. Mission Investment Trust,* 615 F.2d 1068, 1076 (5th Cir. 1980); *Beaufort Concrete Co. v. Atlantic States Construction Co.,* 352 F.2d 460, 462 (5th Cir.), *cert. denied,* 384 U.S. 1004, 86 S.Ct. 1908, 16 L.Ed.2d 1018 (1965).

In addition to submitting an untimely affidavit, Wood also submitted an untimely motion that he characterizes on appeal as a motion to amend the complaint. Wood submitted this motion on May 4, 1981, almost five months after the district court issued its first opinion dismissing each of Wood's eighteen claims.

---

**3.** That style was commented upon by the court below. *Wood v. Santa Barbara Chamber of Commerce,* 507 F.Supp. 1128, 1134 (D.Nev. 1981) (complaining of appellant's "tangled web of pleading by incorporation"). Moreover,

Wood's failure to present coherent claims has resulted in the dismissal with prejudice of a related case. *Wood v. Santa Barbara Chamber of Commerce,* 699 F.2d 484 (9th Cir.1983).

■ If the May 4 motion had been Wood's first motion to amend his pleadings, and if the motion was made prior to a responsive pleading, then the motion to amend should have been granted "as a matter of course." Fed.R.Civ.P. 15(a). This right of amendment can survive dismissal of a complaint if such dismissal precedes the defendant's answer. *Solenoid Devices, Inc. v. Ledex, Inc.,* 375 F.2d 444 (9th Cir. 1967). However, the docket sheet in this case records three answers filed before Wood made his May 4 motion to amend. One answer, that of Kern-Tribune Corp., was filed February 22. Two more were filed on February 26.

■ Since Wood was not entitled to amend "as a matter of course," amendment would have been by leave of court, "with leave to be freely given when justice so requires." Fed.R.Civ.P. 15(a). Denial of a late motion to amend is generally predicated upon prejudice to the opposing party. *Wyshak v. City National Bank,* 607 F.2d 824, 826 (9th Cir.1979). Other relevant factors include undue delay, bad faith, and the futility of the proposed amendment. *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); *Howey v. United States,* 481 F.2d 1187, 1190 (9th Cir. 1973). This court reviews the denial of a motion to amend for abuse of discretion. *Waits v. Weller,* 653 F.2d 1288, 1291 (9th Cir.1981); *PSG Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 417 F.2d 659, 664 (9th Cir.), *cert. denied,* 397 U.S. 918, 90 S.Ct. 924, 25 L.Ed.2d 924 (1969). Under this standard, there was ample support for the district court's denial of the motion to amend.

■ The May 4 motion would have caused undue prejudice to the publisher defendants. It was offered by Wood more than two years after he filed his original complaint and would have inverted the legal theory under which the defendants were to be charged with liability.[4] By itself, the last-minute changes in trial preparation this would have required might not have been unduly prejudicial. *But cf. A. Cherney Disposal Co. v. Chicago & Suburban Refuse Disposal Corp.,* 68 F.R.D. 383, 385 (N.D.Ill.1975) (motion to amend denied where it added new claims and new parties and would have required extensive new discovery). However, there was sufficient prejudice to deny the motion to amend in light of the futility of the motion and the apparent bad faith with which it was offered.

The bad faith of Wood in offering his motion to amend can be inferred from two facts clearly established in the record. First, repetitious motions to amend are a favorite tactic of Wood, as is demonstrated by a similar motion filed in this case in January 1981 and by a series of amended complaints in a prior related lawsuit, *Wood v. McEwen,* 644 F.2d 797 (9th Cir.1981), *cert. denied,* 455 U.S. 942, 102 S.Ct. 1437, 71 L.Ed.2d 654 (1982). Second, the May 4 motion would merely have imported into this case claims and defendants that were already present in the consolidated multi-district litigation then pending before Judge Foley.

This second fact also shows the futility of the May 4 motion. At the time it was offered, the amended complaint would have provided Wood with no practical benefits: it would not have expanded upon the issues and claims already present in a parallel, pending action. *See Flintkote Co. v. Diener,* 185 F.Supp. 509, 510 (D.Puerto Rico 1960). In this context, therefore, we hold that the district court did not abuse its discretion in denying the May 4 motion to amend the complaint.

---

4. Originally, Wood had claimed that the over 250 publisher defendants were liable as principal infringers of his copyrights since they had published advertisements containing his photographs. The May 4 motion sought to argue that although the publisher defendants could not be liable as principals if they published outside of the statutory period, they could be liable vicariously for the more recent reproduction of their periodicals by microfilm and microfiche companies. The district court rejected this vicarious liability theory as a matter of law. We need not pass on that issue. Instead, we find that the theory was properly rejected under the district court's discretion under Rule 15(a).

2. *Rejection of fraudulent concealment defense.*

In addition to the May 4 motion to amend his complaint, appellant sought to avoid having his copyright claims invalidated under the statute of limitations by invoking the fraudulent concealment doctrine. We find that the court below properly rejected Wood's attempted use of this doctrine.

Civil actions brought under the Copyright Act must be brought "within three years after the claim accrued." 17 U.S.C. § 507 (1976). General equitable doctrines provide that a statute of limitations may be tolled by fraudulent concealment of a cause of action by the defendant. This principle has been held applicable to copyright claims. *Prather v. Neva Paperbacks, Inc.,* 446 F.2d 338, 340 (5th Cir.1971). Nevertheless, even if we were to apply such a doctrine to the Copyright Act generally, we would find it inapplicable in this case. A fraudulent concealment defense requires a showing both that the defendant used fraudulent means to keep the plaintiff unaware of his cause of action, and also that the plaintiff was, in fact, ignorant of the existence of his cause of action. *Id.* at 341. Appellant has made no showing to prove the first prong of this test and has affirmatively disproven the second in a deposition taken of him in 1974 and in a lawsuit he brought in 1972.

Appellant objects to the district court's reliance on the 1974 deposition. He claims that the deposition was inaccurate and, in contravention of Fed.R.Civ.P. 30(e), unsigned. Even if this deposition was improper, however, neither we nor the district court need rely on it in rejecting the claim of fraudulent concealment. Far more damaging to that claim is the litigation that Wood himself began in 1972. In that action, Wood sued for alleged infringement of one of the photographs he took for the Santa Barbara Chamber of Commerce. Wood argues that the litigation in 1972

concerned the suspected infringing use of a single photograph. He concludes that the litigation should not be used to impute to him knowledge of the contemporaneous infringement of the other photographs at issue in the present case. We reject this argument.

By initiating his 1972 lawsuit, Wood indicated his suspicion that at least one of his photographs had been infringed. That suspicion placed upon Wood a duty to investigate further into possible infringements of his copyrights. Although Wood may not actually have conducted this further investigation,[5] equity will impute to a litigant knowledge of facts that would have been revealed by reasonably required further investigation. *Cf. Braskin v. Ernst & Ernst,* 589 F.2d 1363, 1367 (9th Cir.1978) (applying California law analagous to the equitable doctrine of fraudulent concealment). In this case, we hold as a matter of law that Wood should reasonably have discovered the allegedly infringing use of those photographs currently at issue. To be sure, the sailboat photograph that underlay Wood's 1972 lawsuit was physically different from the photographs underlying the current action. Nevertheless, as Wood's own exhibit shows, Wood took all these photographs at the same time. He took them all for the same advertising company to be used in the same advertising campaign. No rational jury would, on these narrow facts, fail to find that a reasonable litigant should have investigated and would have discovered the potential causes of action underlying this lawsuit.

3. *Finding of no in personam jurisdiction.*

Appellant objects to the district court's conclusion that it lacked *in personam* jurisdiction over all the non-Nevada defendants. In order to establish personal jurisdiction over a defendant, that defendant must be found to have "minimum contacts" with the forum state. *International*

5. Appellant will not be heard to object that he was prevented from completing discovery in the 1972 action. It was appellant's own malfeasance during that discovery that caused it to be curtailed. *See Wood v. McEwen,* 644 F.2d 797, 799–800 (9th Cir.1981), *cert. denied,* 455 U.S. 942, 102 S.Ct. 1437, 71 L.Ed.2d 654 (1982).

*Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). This determination depends on the "relationship among the defendant, the forum, and the litigation." *Shaffer v. Heitner,* 433 U.S. 186, 204, 97 S.Ct. 2569, 2580, 53 L.Ed.2d 683 (1977). The party asserting jurisdiction has the burden of proof once the issue is raised. *Amba Marketing Systems, Inc. v. Jobar International, Inc.,* 551 F.2d 784, 787 (9th Cir. 1977).

▮ To meet his burden of proof by showing minimum contacts, Wood raises two arguments. Neither is persuasive. First, Wood claims that the forum state contacts of Chace Company Advertising, Inc., should be treated as the contacts of the publishers themselves. Chace Company Advertising is the company that contracted with Wood to take photographs for the Santa Barbara Chamber of Commerce. We cannot accept Wood's conclusion that because Chace placed advertisements with the publisher defendants it should be treated as their agent for purposes of *in personam* jurisdiction. Wood cites no authority to support this conclusion and we have found none. Moreover, even for the Chamber of Commerce, for which Chace was arguably an agent, we find Chace's contacts with the forum state insufficient to form the basis for *in personam* jurisdiction. Wood refers the panel to *Hutter Northern Trust v. Door County Chamber of Commerce,* 403 F.2d 481 (7th Cir.1968) as proof that an advertising agency soliciting tourist trade in a state will subject its client to that state's jurisdiction. However, Chace's contacts here do not approach the quality or quantity of contacts in *Hutter.* 403 F.2d at 485.

▮ Wood's second argument also fails to meet his burden of showing *in personam* jurisdiction. Wood claims that each of the publisher-defendants has solicited advertising from advertisers within Nevada. Relying on *McGee v. International Life Insurance,* 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), Wood asserts that this is adequate to meet the minimum contacts test. We disagree. Even assuming that each of the 250-odd publishers has actually solicited advertising in Nevada, that act alone would not create personal jurisdiction in this case. Unlike *McGee,* this case does not arise out of or result from the forum-related activities asserted by Wood. Moreover, we cannot, on the basis of Wood's allegations, say that it would be reasonable and fair for Nevada to assert jurisdiction over the non-Nevada publishers in this case. *See Thomas P. Gonzalez Corp. v. Consejo Nacional de Produccion de Costa Rica,* 614 F.2d 1247, 1251 (9th Cir.1980). The publisher-defendants have caused no injury in Nevada or to a Nevada resident. The advertisements that underlie Wood's claims against the publishers are for a city in California. They were commissioned and placed by a California advertising agency. They were taken in California by the appellant, who is a California resident. According to the district court, the only reason that this action was brought in Nevada rather than California was appellant's "blatant forum shopping." *Wood v. Santa Barbara Chamber of Commerce, Inc.,* 507 F.Supp. 1128, 1139 (D.Nev.1980).

### 4. *Other Issues.*

▮ Appellant raises three final issues on appeal that merit only brief discussion. First, he objects to the application of res judicata to this case to bar his claim that the magistrate supervising discovery in his 1972 lawsuit was biased. Wood claims this is a different lawsuit, involving different parties than the 1972 action. Still, Wood himself was a party in the lawsuit originally raising this issue. Wood lost in that action and is precluded from raising the issue anew. *See Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979).

▮ Appellant also objects to the fact that the district court failed to enter default judgments against several publishers who failed to appear in this case. Since the court found that it lacked personal jurisdiction over any of the non-Nevada publishers, it was correct in not entering default judgment.

■ Finally, appellant objects to the district court's refusal to transfer his claims against the publisher defendants to districts having personal jurisdiction. The district court was correct in its result and its reasoning. Title 28 U.S.C. § 1406(a) has been held to authorize the transfer of a case so as to cure the lack of personal jurisdiction in the district where the case was first brought. *Goldlawr v. Heiman,* 369 U.S. 463, 466, 82 S.Ct. 913, 915–916, 8 L.Ed.2d 39 (1961). Still, such transfer is only to be "in the interest of justice." Justice would not have been served by transferring Wood's claims back to a jurisdiction that he purposefully sought to avoid through blatant forum shopping.

## INJUNCTION AGAINST RELITIGATION

In the second half of his consolidated appeal, Wood appeals from an order entered by the district court on June 1, 1981. That order refers to two lawsuits: Civil LV 79–1 RDF, the Nevada action concerning which we uphold the district court's dismissal, and MDL–450, the consolidation of 35 actions filed by Wood in 30 jurisdictions during the pendency of Civil LV 79–1 RDF. The order, despite its very broad language,[6] had two discrete effects. First, it temporarily enjoined Wood from initiating any new actions that might parallel the issues currently under submission in MDL–450. Second, it forever enjoined Wood from relitigating Civil LV 79–1 RDF or MDL–450. Wood raises a variety of objections to the order, chief among which are claims that the district court lacked jurisdiction to issue the order, that the order was an abuse of discretion, and that the order was overbroad. We examine these objections as they relate to each effect of the order.

1. *Injunction against contemporaneous lawsuits during the pendency of MDL–450.*

Although the district court's injunction is cast in terms of preventing "relitigation," one of the stated purposes of the order is to prevent Wood from filing parallel actions in other federal courts during the pendency of MDL–450. Read in the context of the entire order, then, we interpret the district court's injunction to meet this purpose.

■ A United States District Court hearing a particular case possesses the power to enjoin the filing of related lawsuits in other federal courts. *Kerotest Manufacturing Co. v. C–O–Two Fire Equipment Co.,* 342 U.S. 180, 72 S.Ct. 219, 96 L.Ed. 200 (1952). In this case, the district court had ample cause to issue such an injunction. While Judge Foley was deciding Civil LV 79–1 RDF, Wood initiated the 35 new actions that were ultimately consolidated as MDL–450. After MDL–450 was subsequently assigned to Judge Foley, he understandably feared that Wood would begin new lawsuits before a judgment could be rendered in that case. We affirm Judge Foley's order as applied to prevent Wood from filing parallel actions in other federal courts during the pendency of MDL–450.

2. *Injunction against relitigation of Civil LV 79–1 RDF.*

■ We also affirm the district court's order insofar as it merely enjoined relitigation of Civil LV 79–1 RDF and MDL–450. We modify the order to clarify that its scope is coextensive with the scope of collateral estoppel.[7]

**6.** The district court's order reads:
[I]t is hereby ordered that plaintiff is forever restrained and enjoined from relitigating, or attempting to relitigate, by commencing or filing, in any Federal Court, any future action, complaint, or cause of action or any right, question of fact or law relating in any manner to any injuries, rights, liabilities or claims for damages, or for any recovery whatsoever, including but not limited to claims for copyright infringement, in contract, in tort or in equity, of plaintiff arising out of the facts and legal issues and theories

raised in Civil LV 79–1 RDF, the MDL–450 action, or any right of relief pertaining to plaintiff's alleged copyrighted photographs entitled "Santa Barbara Like It Is Today."

**7.** Despite its use of the word "relitigating", the district court's order appears to bar all future litigation remotely connected to the photographs that Wood took for the Santa Barbara Chamber of Commerce. Still, the object of the injunction is clearly to bar relitigation: Wood is "enjoined from relitigating . . ." and all other, more far-reaching language in the order is lim-

▮ Wood first objects that the district court could not enjoin relitigation of Civil LV 79–1 RDF because it had issued its final judgment in that case long before it issued its order. We find this objection without merit. A district court retains jurisdiction to enforce the judgments it enters. *Dietzsch v. Huidekoper,* 103 U.S. 494, 26 L.Ed. 497 (1880); *cf.* 28 U.S.C. § 2283 (1976) (exception to Anti-Injunction Act where state court proceedings threaten federal court judgment). The doctrines of collateral estoppel and res judicata ordinarily provide adequate assurance that one court's resolution of a controversy will be respected by other courts. Nevertheless, under the All Writs Act, 28 U.S.C. § 1651, district courts do have the power to reinforce the effects of these doctrines by issuing an injunction against repetitive litigation. *Clinton v. United States,* 297 F.2d 899 (9th Cir.1961); *cf. Hardwick v. Doolittle,* 558 F.2d 292 (5th Cir.1977) (injunction against relitigation not available in habeas context where res judicata is inapplicable).

▮ Given that the district court had the power to enjoin Wood from relitigating his claims, we must next decide whether issuing an injunction against relitigation in this case was an abuse of discretion. The injunction in this case is similar to that issued by the court in *Clinton.* There, an injunction against relitigation was based on two previous attempts to litigate exactly the same claim. 297 F.2d at 900. Here, Wood has shown his intention continually to relitigate claims that have been previously dismissed. In the action discussed above, for example, Wood sought to reopen claims of fraud and bias that were rejected in *Wood v. McEwen,* 644 F.2d 797 (9th Cir. 1981), *cert. denied,* 455 U.S. 942, 102 S.Ct. 1437, 71 L.Ed.2d 654 (1982). Moreover, an injunction against relitigation need not be

premised on exact repetition of an earlier lawsuit. The general pattern of litigation in a particular case may be vexatious enough to warrant an injunction in anticipation of future attempts to relitigate old claims. *See Pavilonis v. King,* 626 F.2d 1075 (1st Cir.1980); *Ruderer v. United States,* 462 F.2d 897 (8th Cir.1972). In evaluating the exercise of discretion in this case, then, we turn to the specific facts of this case, assessed against the general advantages and disadvantages afforded by enjoining relitigation. To frame our evaluation, we first consider the advantages and disadvantages of dispensing injunctive relief against relitigation.

One advantage of dispensing injunctive relief against relitigation is that it is an easy way to articulate forcefully the principles of collateral estoppel and res judicata. For the judicial system, this means a preservation of judicial resources. By describing the principles of collateral estoppel in mandatory terms and by reinforcing those principles with the threat of holding a vexatious litigant in contempt of court, a district judge may deter the filing of frivolous and repetitive lawsuits. For the victorious litigant, obtaining an injunction against relitigation provides an expedient method of asserting collateral estoppel. Armed with an injunction against relitigation, the successful litigant need not convince a new judge that the action pending before him is similar to and estopped by an earlier judgment. Instead, the litigant need only apply for a contempt order from a judge who, because he drafted the earlier judgment, can more easily determine whether a new action is barred. *See Toucey v. N.Y. Life Insurance Co.,* 314 U.S. 118, 144, 62 S.Ct. 139, 149, 86 L.Ed. 100 (1941) (Reed, J., dissenting).

Beyond these advantages, however, the use of injunctions against relitigation poses a disturbing problem for our system of jus-

---

ited by this phrase. To avoid any possible confusion, we affirm the district court's order by modifying its language to read:

> [I]t is hereby ordered that plaintiff is forever restrained and enjoined from relitigating, or attempting to relitigate, by commencing or filing, in any Federal Court, any future action, complaint or cause of action seeking adjudication of the factual and legal issues

adjudicated and dismissed with prejudice in Civil LV 79–1 RDF and MDL–450.

Our authority to modify a district court order derives from 28 U.S.C. § 2106 (1976). *See also Multistate Tax Commission v. United States Steel Corp.,* 659 F.2d 931, 932 (9th Cir.1981) (per curiam) (affirming a district court order as modified).

tice. If used too freely or couched in overly broad terms, injunctions against future litigation may block free access to the courts. Such access not only insures protection of privately created commercial interests, it also serves as the final safeguard for vitally important constitutional rights. We are particularly reluctant to impede access to the courts for a *pro se* litigant such as Wood. As a class, those without the resources to hire counsel may, more heavily than most, have to depend on the judiciary to guard their interests.

Within this framework, we cannot say that the district court abused its discretion in enjoining Wood from relitigating issues decided in Civil LV 79–1 RDF and MDL–450.[8] Our approval of an anticipatory injunction against relitigation is premised upon two factors uniquely present in this case. Civil LV 79–1 RDF and MDL–450 involved so many defendants on such baseless claims that it became particularly important that these defendants, once victorious, have an expedient way of blocking future attempts to relitigate the same issues. Moreover, the history of this case shows that such future attempts are highly likely. In the past, Wood's rate of litigation has been stimulated rather than slowed by adverse judgments.

To understand the narrowness of our present decision, it is important to understand the scope and nature of Wood's litigiousness. From a simple *pro se* employment dispute, Wood has produced a morass of litigation, into which he has pulled over 250 defendants and, at one point, over 30 district courts. It is the style of Wood's litigation, however, not merely its abundance, that justifies the district court's order. Wood has clearly shown to this court and to the district court that, unless enjoined, he will continually attempt to renew his conflict with the Santa Barbara Chamber of Commerce. In both an action previously appealed to this court, *Wood v. McEwen,* 644 F.2d 797 (9th Cir.1981), *cert. denied,* 455 U.S. 942, 102 S.Ct. 1437, 71 L.Ed.2d 654 (1982), and in his action before

Judge Foley, Wood sought repeatedly to amend his complaints, his motions, and, ultimately, the judgments entered against him. In addition to continual amendments, Wood's litigating style includes rekindling his litigation in a new action just as it is extinguished, or about to be extinguished, in an earlier action. Wood's first lawsuit was brought directly against his employer. When that action was dismissed by a U.S. magistrate for abuse of discovery, Wood filed a second action claiming that the magistrate had been fraudulently biased. Having lost his action against the magistrate, Wood shifted his original copyright claims and redirected his litigation against all those publishers that he believes published his employer's advertisements. Most recently, just before an adverse judgment was about to be rendered by Judge Foley in Civil LV 79–1 RDF, Wood filed the 35 parallel actions now consolidated as MDL–450. Given this history, and given the limited resources of the judicial system, it was not an abuse of discretion to issue an injunction against Wood in anticipation of future lawsuits that might repeat Civil LV 79–1 RDF and MDL–450.

Together with finding that the circumstances of this case warranted an injunction in some form, we also find that the particular form of the injunction issued against Wood is specific enough to satisfy the requirements of Federal Rule of Civil Procedure 65(d).

The danger of an overly broad injunction is that it will leave a litigant uncertain as to what he may or may not do without being in contempt of court. *Schmidt v. Lessard,* 414 U.S. 473, 476, 94 S.Ct. 713, 715, 38 L.Ed.2d 661 (1973). In this case, however, we have no doubt that the injunction satisfies Rule 65(d) by describing to Wood "in reasonable detail ... the act or acts sought to be restrained." This is not a case like *Longshoremen v. Philadelphia Marine Trade Ass'n,* 389 U.S. 64, 88 S.Ct. 201, 19 L.Ed.2d 236 (1967), where an injunction improperly threatened a union with contempt if it failed to enforce an earlier arbitration

---

**8.** We take judicial notice that MDL–450 was decided on July 14, 1981. The decision has since been upheld on appeal. *Wood v. Santa* *Barbara Chamber of Commerce,* 699 F.2d 484 (9th Cir.1983).

agreement. There, the union had to guide its conduct according to its interpretation of the future applicability of an "abstract conclusion of law" rendered by the arbitrator under a specific set of facts. Here, no such prognostication is required of Wood. The injunction speaks explicitly in terms of barring "relitigation." Our modification of the order clarifies that Wood is merely required to respect the principles of collateral estoppel and to not reopen litigation based on the facts and issues decided in Civil LV 79–1 RDF and MDL–450.

The defendants seek double costs and damages, characterizing these appeals as frivolous. The issues presented in this case are not entitled to that characterization. Single costs only are allowed to defendants as the prevailing parties.

APPEAL NO. 81–5422 IS DISMISSED. THE ORDER APPEALED FROM IN NO. 81–5562 IS AFFIRMED AS MODIFIED.