35 F.3d 571
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
I. Preston MEEKS, Plaintiff-Appellant,
v.
PRN, INC., a Florida corporation; Health Care Staffing,
Inc., a Florida corporation; PRN Franchise Systems, Inc., a
Florida corporation; Willard L. Wendt, and Nurses PRN of
Denver, Inc., a Florida corporation; Dwight R. Brewer,
individually and dba PRN Health Care Staffing, Defendants-Appellees.
 No. 92-37019.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted July 15, 1994.
Decided Aug. 30, 1994.
 
 1
 Before: TANG, FERGUSON, and WIGGINS, Circuit Judges
 
 
 2
 MEMORANDUM*
 
 
 3
 Appellant I. Preston Meeks ("Appellant") appeals the summary judgment entered against him in his suit against PRN Franchise Systems, Inc. ("FSI") and others (collectively "Appellees"). We have jurisdiction over the final judgment under 28 U.S.C. Sec. 1291 and reverse.
 
 
 4
 The district court granted summary judgment because it concluded that the stock purchase contract with Preferred Registered Nurse Staffing Service, Inc. ("PRNSS"), upon which Appellant bases his claim for relief, was void under ORS 60.181(3)(a), which sets limits to permissible distributions to stockholders. ORS 60.181(3) provides
 
 
 5
 (3) A distribution may be made if, after giving it effect, in the judgment of the board of directors: (a) The corporation would be able to pay its debts as they become due in the usual course of business; and (b) The corporation's total assets would at least equal to the sum of its total liabilities plus, unless the articles of incorporation permit otherwise, the amount that would be needed if the corporation were to be dissolved at the time of the distribution, to satisfy the preferential rights upon dissolution of shareholders whose preferential rights are superior to those receiving the distribution.
 
 
 6
 The determination by the board of directors that the corporation is solvent enough to make a distribution may be based "either on financial statements prepared on the basis of accounting practices and principles that are reasonable in the circumstances or on a fair valuation or other method that is reasonable in the circumstances." ORS 60.181(4) (emphasis added). The district court concluded that the directors (Appellant and Bruce Linn ("Linn")) used no reasonable method to determine the solvency of PRNSS, and that the Stock Sale Agreement was therefore illegal and unenforceable. Based on that conclusion, the court granted summary judgment to Appellees on both the fraudulent transfer and tortious interference claims.
 
 
 7
 This court reviews a grant of summary judgment de novo. Jones v. Union Pac. R.R., 968 F.2d 937, 940 (9th Cir.1992); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 629 (9th Cir.1987). We must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. Tzung v. State Farm Fire & Cas. Co., 873 F.2d 1338, 1339-40 (9th Cir.1989).
 
 
 8
 We conclude that genuine issue of material fact remain that make this case inappropriate for resolution by summary judgment. Appellant introduced evidence that the two directors, Linn and Appellant, concluded that PRNSS could meet its obligations as they came due after PRNSS bought back Appellant's stock because it would then be able to avail itself of a favorable business opportunity with FSI.[1] The district court concluded that summary judgment was appropriate because no sufficiently formal analysis of PRNSS's cash flow situation had been made. Under Oregon law, however, the determination that the company is solvent enough to make a distribution may be made on the basis of any method that is reasonable under the circumstances. In this case, the company was small and closely held, which tends to vitiate the necessity of a detailed, formal analysis. The board, moreover, was entitled to take into account the future prospects of the company, such as its ability to refinance current liabilities. See Robert C. Art, Corporate Shares and Distributions in a System Beyond Par: Financial Provisions of Oregon's New Corporations Act, 24 Willamette L.Rev. 203, 249-50 (1988). The $300,000 line of credit promised by FSI would have covered all of PRNSS's liabilities at the time of the distribution. That fact alone may be sufficient to support a reasonable conclusion that PRNSS would be able to pay its debts as they came due. As to the second test of ORS 60.181(3), balance sheet solvency, the financial statements for PRNSS at the time may not have reflected some of the most valuable assets of a service firm like PRNSS--its name recognition and relationships with employees and clients. A prospective buyer or associate (such FSI) would find that goodwill valuable and be willing to pay for it. Genuine issues of material fact therefore exist as to the reasonableness, under the circumstances, of the directors' conclusion that the stock buy-back and consequent affiliation with FSI would leave PRNSS solvent. Summary judgment was therefore improperly granted.
 
 
 9
 In addition, we conclude that the district court erred in its holding that the legal invalidation of the stock buy-back would bar Appellant's claim for fraudulent transfer of the assets of PRNSS to FSI. The court asserted that "plaintiff is not a creditor of PRNSS" because the Stock Sale Agreement was void. That conclusion does not necessarily follow from the stated premise. Under the Oregon fraudulent conveyance statute, " '[c]reditor' means a person who has a claim against a debtor," and " '[c]laim' means a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured." ORS 95.200(4), (3) (emphasis supplied).
 
 
 10
 Even if the contract were invalidated under ORS 60.181(3), that would not extinguish Appellant's interest in PRNSS. The district court's holding with regard to the stock transaction only substituted the original ownership interest for the contractual claim that Appellant believed he had. Appellant retained legal and equitable ownership of his interest in the firm, rather than a contractual right to a specific sum of cash. PRNSS, FSI, Linn, and Wendt, however, were able to consummate the transaction because the stock buyback was presumed valid, and they had Appellant's proxy. To the extent that the stock transaction was invalid, Appellant may retain an equitable claim for any unjust enrichment that resulted from the other parties' actions with respect to PRNSS and that Appellant was induced not to resist by the invalid contract. Moreover, Oregon law provides protections for minority shareholders who dissent from a sale or exchange of all or substantially all of the property of a corporation. See ORS 60.554 et seq. Without deciding the issue, we note that it is at least possible that the transaction between PRNSS and FSI was an effective acquisition of PRNSS.[2] That would give Appellant a legal claim for payment of the fair value of his shares. We therefore hold that the district court erred as a matter of law by holding that the invalidity of the stock sale necessarily rendered Appellant not a "creditor" of PRNSS. The summary judgment on the fraudulent transfer claim was error for this reason as well.
 
 
 11
 For the foregoing reasons, we REVERSE the summary judgment entered by the district court and REMAND for further proceedings consistent with this disposition.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 We find no error in the district court's consideration of the late affidavit. Evidentiary rulings are reviewed for an abuse of discretion and will not be reversed absent some prejudice. McGonigle v. Combs, 968 F.2d 810, 818 n. 6 (9th Cir.), cert. dismissed, --- U.S. ----, 113 S.Ct. 399 (1992); Roberts v. College of the Desert, 870 F.2d 1411, 1418 (9th Cir.1988). We find no abuse of discretion in the consideration of a very relevant, if somewhat delinquent, affidavit. The affidavit was not, as Appellees contend, hearsay. It was admissible to prove the state of mind of a director (Appellant), which fact is relevant to the reasonableness of the directors' determination. See Wood v. Santa Barbara Chamber of Commerce, 705 F.2d 1515, 1519 (9th Cir.1983) (affirming the striking of a late affidavit because the court "acted within its discretion"), cert denied, 465 U.S. 1081 (1984)
 
 
 [2]
 Appellees argue that the assets of PRNSS were acquired pursuant to a valid security interest; however, they also argue that PRNSS was insolvent at the time of the transaction with Appellant, just before the execution of the Franchise Agreement. While Appellees may not be estopped from asserting the invalidity of the contract on public policy grounds, they may be estopped from arguing other, inconsistent positions. Execution of a security agreement with an insolvent entity is little different from acquiring its assets to the extent of the security agreement