SMITH, Justice.
Indiana Mills & Manufacturing, Inc. (“IMMI”), and McNeilus Truck and Manufacturing, Inc. (“McNeilus”) (collectively “the petitioners”), petition for a writ of mandamus directing the Macon Circuit Court to transfer this action to the Lee Circuit Court on the basis of forum non conveniens. We grant the petition and issue the writ.

Facts and Procedural History

James Johnson worked for Sunflower Waste, LLC (“Sunflower”), a waste-disposal company whose principal office is located in Tallapoosa County. On March 7, 2006, James was driving a garbage truck owned by his employer. While James was traveling on Marvyn Parkway in Lee County, the raised rear door of the truck struck an overhead railroad trestle. The truck crashed, and James was killed when he was ejected through the front windshield.
The Opelika police and fire departments responded to the scene of the accident. James’s body was transported to the East Alabama Medical Center, and his death was investigated by the Lee County coroner. The garbage truck was towed to a Sunflower facility located in Lee County.
Subsequently, Marcy Johnson, James’s widow, on behalf of James’s estate, sued McNeilus, the manufacturer of the garbage truck, and IMMI, the manufacturer of the seat belts in the garbage truck, alleging, among other things, that the truck and its seat belts were defective. Additionally, Marcy sued three individuals who were employees of Sunflower at the time of the accident: Jack Conner, a maintenance manager; Russell Davis, an operations manager; and Van Forrester, a district manager, alleging that these individual defendants willfully breached a duty to provide James with a safe work *539 environment and that they willfully removed, failed to install, or failed to maintain certain safety devices on the garbage truck and, in doing so, contributed to James’s death. See Ala.Code 1975, § 25-5-11.
The petitioners, joined by Conner, Davis, and Forrester, filed motions to transfer the case to the Lee Circuit Court based on the doctrine of forum non conve-niens. The trial court denied the motion, and IMMI and McNeilus petition for mandamus relief.

Standard of Review

“ ‘The proper method for obtaining review of a denial of a motion for a change of venue in a civil action is to petition for the writ of mandamus.’ Ex parte National Sec. Ins. Co., 727 So.2d 788, 789 (Ala.1998). A writ of mandamus is appropriate when the petitioner can demonstrate ‘(1) a clear legal right to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) the properly invoked jurisdiction of the court.’ Ex parte BOC Group, Inc., 823 So.2d 1270, 1272 (Ala.2001). Additionally, this Court reviews mandamus petitions challenging a ruling on venue on the basis of forum non conve-niens by asking whether the trial court exceeded its discretion. Ex parte Fuller, 955 So.2d 414 (Ala.2006); Ex parte Verbena United Methodist Church, 953 So.2d 395 (Ala.2006). Our review is limited to only those facts that were before the trial court. Ex parte Pike Fabrication, Inc., 859 So.2d 1089, 1091 (Ala.2002).” Ex parte Kane, 989 So.2d 509, 511 (Ala.2008).

Discussion

Alabama Code 1975, § 6-3-21.1(a), provides when a civil action must be transferred under the doctrine of forum non conveniens:
“With respect to civil actions filed in an appropriate venue, any court of general jurisdiction shall, for the convenience of parties and witnesses, or in the interest of justice, transfer any civil action or any claim in any civil action to any court of general jurisdiction in which the action might have been properly filed and the case shall proceed as though originally filed therein.... ”
(Emphasis added.) A party moving for a transfer under § 6-3-21.1 has the initial burden of showing, among other things, one of two factors: (1) that the transfer is justified based on the convenience of either the parties or the witnesses, or (2) that the transfer is justified “in the interest of justice.” Ex parte Masonite Corp., 789 So.2d 830, 831 (Ala.2001); Ex parte National Sec. Ins. Co., 727 So.2d 788, 789 (Ala.1998). A party may show that either or both of these factors require a transfer.
There is no dispute that venue in this case is proper in both Macon County and Lee County. However, the petitioners argued in their motion for a change of venue and in their mandamus petition both that the convenience of the parties and witnesses required that the case be transferred to Lee County and that it was in the interest of justice to do so. We need not analyze the convenience of the parties and witnesses in this case, because we hold that the interest of justice requires a transfer.[1]
*540 The “interest of justice” prong of § 6-3-21.1 requires “the transfer of the action from a county with little, if any, connection to the action, to the county with a strong connection to the action.” Ex parte National See. Ins. Co., 727 So.2d at 790. Therefore, “in analyzing the interest-of-justice prong of § 6-3-21.1, this Court focuses on whether the ‘nexus’ or ‘connection’ between the plaintiff’s action and the original forum is strong enough to warrant burdening the plaintiffs forum with the action.” Ex parte First Tennessee Bank Natl Ass’n, 994 So.2d 906, 911 (Ala.2008). Additionally, this Court has held that “litigation should be handled in the forum where the injury occurred.” Ex parte Fuller, 955 So.2d 414, 416 (Ala.2006). Further, in examining whether it is in the interest of justice to transfer a case, we consider “the burden of piling court services and resources upon the people of a county that is not affected by the case and ... the interest of the people of a county to have a case that arises in their county tried close to public view in their county.” Ex parte Smiths Water & Sewer Auth., 982 So.2d 484, 490 (Ala.2007). The petitioners in this case are thus required to demonstrate “ ‘that having the case heard in [Lee] County would more serve the interest of justice’ ” than having the case heard in Macon County. Ex parte First Tennessee Bank, 994 So.2d at 909 (quoting Ex parte Fuller, 955 So.2d 414, 416 (Ala.2006)).
Marcy argues that the interest of justice does not require a transfer in this case to Lee County because none of the parties reside or are located in Lee County. Additionally, she notes that neither IMMI or McNeilus “have business relationships” in Lee County, whereas Sunflower conducts business in Macon County and Conner resides there. Finally, litigating the case in Lee County, Marcy contends, would be less convenient for the parties.[2]
We agree that this case certainly has a connection with Macon County — as Marcy notes, Conner resides there and Sunflower conducts business there. Additionally, it is *541 true that none of the parties in this case actually resides in Lee County. However, we nevertheless hold that the overall connection between Macon County and this case is weak and that the connection between the case and Lee County is strong.
First and foremost, the accident occurred in Lee County. Lee County police and emergency personnel — the Opelika Police Department and the Opelika Fire Department — responded to the scene and investigated the accident. Additionally, Gene Manning, the chief deputy coroner of Lee County, investigated James’s death. He testified in an affidavit that all the work he performed in connection with the investigation took place in Lee County. Additionally Danny Cotney, the assistant fire chief of the Opelika Fire Department, testified that the various records and documents generated by the department are located in Lee County.[3]
On the other hand, the “connection” or “nexus” with Macon County in this case is weak. No party but Conner resides or is located there.[4] Additionally, none of the relevant facts in this case actually involve Macon County.
In her dissent, Chief Justice Cobb suggests that this Court should defer to the trial court’s decision. In Ex parte First Family Financial Services, Inc., 718 So.2d 658 (Ala.1998), the plaintiff maintained that a transfer was not required “upon the proposition that ‘[transfers under § 6-3-21.1 are within the discretion of the trial judge ... [and that a] trial court [should] give deference to the plaintiffs choice of venue.” Under the venue system established by the Alabama Legislature, “the plaintiff has the initial choice of venue.” 718 So.2d at 659. This “choice” exists because, in many situations, Ala.Code 1975, § 6-3-7, would allow proper venue to exist in more than one county. “Reading [§ 6-3-7] in isolation, one would not discern that the Legislature intended to limit the plaintiffs choice of forum. However, § 6-3-7 must be read in pari materia with other Code sections dealing with the same subject, i.e., venue.... Accordingly, we must read § 6-3-7 in pari materia with § 6-3-21.1.” 718 So.2d at 659-60.
We held in First Family that the adoption of § 6-3-21.1 “substantially modified the law relating to the venue of civil actions.” 718 So.2d at 660. Formerly, “ ‘[t]he ability to transfer cases within Alabama for the convenience of parties and witnesses and in the interest of justice was denied Alabama courts ....’” 718 So.2d at 660 (quoting Robert D. Hunter, Alabama’s 1987 Tort Reform Legislation, 18 Cumb. L.Rev. 281, 289-90 (1988)). We concluded, however, “that the Legislature, in adopting § 6-3-21.1, intended to vest in the trial courts, the Court of Civil Appeals, and this Court the power and the duty to transfer a cause when ‘the interest of justice’ requires a transfer.” 718 So.2d at 660 (emphasis added).
The plaintiff in First Family argued “that a trial judge has almost unlimit *542 ed discretion in such matters.” We noted that although the trial court “has a degree of discretion in determining whether the factors listed in the statute ... are in favor of transferring the action,” this degree of discretion is not unlimited and “must be considered in light of the fact that the Legislature used the word ‘shall ’ instead of the word ‘may’ in § 6-3-21.1.” 718 So.2d at 660 (emphasis added). This statute, we have subsequently noted, is “compulsory,” Ex parte Sawyer, 892 So.2d 898, 905 n. 9 (Ala.2004), and the use of the word “shall” is “imperative and mandatory.” Ex parte Prudential his. Co. of America, 721 So.2d 1135, 1138 (Ala.1998) (comparing the use of the word “shall” in Alabama’s interstate forum non conve-niens statute, Ala.Code 1975, § 6-5-430, with its use in § 6-3-21.1).
The accident made the basis of this case occurred in Lee County, and the accident was investigated by Lee County authorities. We see no need for Macon County, with its weak connection with this case, to be burdened with an action that arose in Lee County simply because one of several defendants resides there. Instead, Lee County clearly has a strong connection with this case. See Ex parte Verbena United Methodist Church, 953 So.2d 395, 400 (Ala.2006) (holding that the “weak nexus” with the county in which an action was filed did not “justify burdening” that county with the trial of that action; thus, the doctrine of forum non conveniens required the case be transferred to a county that had “a much stronger nexus”). We thus conclude that having the case heard in Lee County would “more serve the interest of justice.” Ex parte First Tennessee Bank, 994 So.2d at 909. The trial court therefore exceeded its discretion in refusing to transfer the case to Lee County.[5]
Chief Justice Cobb in her dissent urges this Court to adopt a rule requiring parties to demonstrate a significant likelihood of injustice in order to warrant a change of venue based on the interest-of-justice factor of § 6-3-21.1. Although acknowledging that Alabama law does not require such a showing, Chief Justice Cobb cites several cases in support of the idea that a party should show a “significant likelihood of injustice in the absence of the transfer of the case.” However, the decisions cited in her dissent do not appear to support this assertion.[6] Additionally, it *543 is unclear how the new analysis proposed by Chief Justice Cobb would require any less consideration of “subjective” elements, to which Chief Justice Cobb objects. Moreover, this proposed limitation to the interest-of-justice factor has no support in the text of § 6-3-21.1; no persuasive authority urges its adoption; and neither party in this case has discussed this proposed limitation. We thus see no need to engraft such an analysis to restrict the application of § 6-3-21.1.

Conclusion

The trial court is directed to transfer the case to the Lee Circuit Court.
PETITION GRANTED; WRIT ISSUED.
SEE, LYONS, WOODALL, STUART, BOLIN, and PARKER, JJ., concur.
MURDOCK, J., concurs in the result.
COBB, C.J., dissents.

. Again, a transfer under 6-3-21.1 is appropriate based on either the convenience of the parties and witnesses or in the interest of justice. Chief Justice Cobb, in her dissent, faults this Court for not analyzing the convenience-of-the-parties-and-wilnesses factor, *540 which she argues would not require a transfer in this case. If this were true, however, then a discussion of that issue — given this Court's resolution of the case' — would be dicta. Additionally, Chief Justice Cobb's analysis seems to elevate the convenience-of-the-parties-and-witnesses factor of § 6-3-21.1 over the interest-of-justice factor, which she criticizes as requiring the consideration of "subjective” elements. However, by including the "interest of justice” in § 6-3-21.1, the legislature has deemed this factor as one of two that may be considered when determining if a transfer under that statute is required. Nothing in the plain language of the statute implies that one factor is less worthy of consideration or that it should be ignored altogether.

. Chief Justice Cobb also asserts that this Court's decision to order the case transferred to Lee County moves this case from a county with an average caseload to a county with a higher caseload. However, no argument or evidence on this issue was presented to this Court by the parties; therefore, we may not consider it. In any event, an argument that a case should not be transferred to a circuit court with a higher caseload than the circuit court from which the case is being transferred is negated by the fact that the court services and resources of a county should not be burdened with a case that is only remotely connected with that county. Ex parte Smiths Water & Sewer Auth., supra. Additionally, citizens should not be required to suspend their lives and jobs to serve on a jury in a case with only a tenuous connection to their county merely because their local court has a lighter caseload. See Ex parte First Family Fin. Servs., Inc., 718 So.2d 658, 661 (Ala.1998) (" ‘ "Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation.” ’ " (quoting Ex parte Gauntt, 677 So.2d 204, 221 (Ala.1996) (Maddox, J., dissenting), quoting in turn Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508-09, 67 S.Ct. 839, 91 L.Ed. 1055 (1947))).

. The petitioners also contend that numerous witnesses in this case reside in Lee County. Although the petitioners present affidavits from some of these witnesses, they fail to present affidavits for many others. See Ex parte ADT Sec. Servs., Inc., 933 So.2d 343, 345 (Ala.2006) (noting that, in considering a mandamus petition, this Court looks only to those facts presented to the trial court, and those facts "must be based upon 'evidentiary material,’ which does not include statements of counsel in motions, briefs, and arguments").

. The Johnsons lived in Montgomery County at the time of the accident; Marcy has since moved to Florida. IMMI is an Indiana corporation, and McNeilus is located in Minnesota. Sunflower is located in Tallapoosa County. Davis and Forrester live in Elmore County.

. Chief Justice Cobb, citing caselaw prior to the enactment of § 6-3-21.1, suggests that our review of this ruling risks "expanding this Court’s 'piecemeal' appellate jurisdiction.” However, this Court has consistently reviewed rulings on motions to transfer filed pursuant to § 6-3-21.1 since that Code section was enacted in 1987. Additionally, this Court has reviewed rulings on motions to transfer under the common-law doctrine of forum non conve-niens since at least 1957. See Ex parte Southern Bell Tel. & Tel. Co., 267 Ala. 139, 99 So.2d 118 (1957). Given the clear mandate of § 6-3-21.1 and this Court's historic practice, we decline to abandon our review of rulings on § 6-3-21.1 motions.
Additionally, review by petitions for the writ of mandamus does not offend the maxim that "justice delayed is justice denied.” Alabama law specifically provides that a party may move for a transfer under § 6-3-21.1, and § 6-3-21.1 was specifically designed to end prior abuse of the legal process. Justice is not denied when a party successfully exercises the rights provided it by law — in this case, seeking the correct disposition of a transfer under § 6-3-21.1.

. King v. Russell, 963 F.2d 1301 (9th Cir.1992), involves claims that were filed in an improper venue; the court cited Wood v. Santa Barbara Chamber of Commerce, 705 F.2d 1515, 1523 (9th Cir.1983), in which the appellant claimed that the trial court should have transferred the case to a proper forum instead of dismissing it outright. The court noted in Wood that, under 28 U.S.C. § 1406(a), the trial court had the option of dismissing the case or transferring it "in the interest of justice.” In determining whether a transfer, instead of a dismissal, was "in the interest of *543 justice,” the court held that "justice would not have been served” by transferring a case "to a jurisdiction that [the plaintiff] purposefully sought to avoid through blatant forum shopping.” Neither King nor Wood discussed whether a party, to show that a transfer is in the interest of justice, must show a "significant likelihood of injustice” in the absence of the transfer.
Kawamoto v. CB Richard Ellis, Inc., 225 F.Supp.2d 1209, 1212 (D.Haw.2002), addressed a federal forum non conveniens statute and held that the convenience of the parties and witnesses required a transfer because most of the parties and witnesses lived in California and hearing the case in Hawaii was thus inconvenient. The court did not look to whether there would be a significant likelihood of injustice if the case were not transferred.
Garza v. Garcia, 137 S.W.3d 36 (Tex.2004), involves a Texas statute that specifically requires a determination of whether a transfer or the refusal to transfer would "work an injustice” on either the movant or any other party. See Tex. Civil Practice & Remedies Code § 15.002(b). Our legislature, in enacting § 6-3-21.1, chose not to include a similar explicit rule.
Finally, In re Trust Created Under Agreement Dated September 19, 1983, 469 N.E.2d 768, 772 (Ind.Ct.App.1984), involves the interpretation of Indiana's interstate forum non conve-niens statute by the courts of that state, which require a showing that a "substantial injustice is likely to result” if a case is tried in that state. However, this decision contains no analysis as to why Indiana’s caselaw requires such a consideration.