**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

HEXCEL CORPORATION,
            *Plaintiff-Appellant,*

v.

INEOS POLYMERS, INC., F/K/A BP
Amoco Polymers, Inc.,
            *Defendant-Appellee.*

No. 10-56765

D.C. No.
2:09-cv-05334-
MRP-RNB

OPINION

Appeal from the United States District Court
for the Central District of California
Mariana R. Pfaelzer, Senior District Judge, Presiding

Argued and Submitted
April 12, 2012—Pasadena, California

Filed June 1, 2012

Before: Betty B. Fletcher, Andrew J. Kleinfeld, and
Milan D. Smith, Jr., Circuit Judges.

Opinion by Judge Milan D. Smith, Jr.

## COUNSEL

John DeQ. Briggs (argued), Michael L. Keeley, Daniel J. Matheson, Washington D.C., for plaintiff-appellant Hexcel Corp.

Corey C. Watson, Los Angeles, Scott W. Fowkes (argued), Kathleen Ehrhart, Russell King, Chicago, Illinois, for defendant-appellee Ineos Polymers, Inc.

**OPINION**

M. SMITH, Circuit Judge:

Plaintiff-Appellant Hexcel Corporation (Hexcel) sued Defendant-Appellee Ineos Polymers, Inc., formerly known as BP Amoco Polymers, Inc. (BP Amoco) on November 26, 2008 for antitrust injuries it allegedly suffered as the result of a carbon fiber price-fixing scheme, beginning in 1992. To avoid the effect of the applicable four-year statute of limitations, 15 U.S.C. § l5b, Hexcel contends that the statute of limitations was tolled due to fraudulent concealment by BP Amoco. Hexcel contends that because of BP Amoco's fraudulent concealment, it neither knew, nor could have known, of its potential claims until the conclusion of its own internal investigation in February 2001.

Hexcel was aware of, and likely even participated in the alleged carbon fiber price-fixing scheme, throughout the 1990s. Hexcel's involvement in this scheme led to its being subpoened in January 1999, along with other carbon fiber producers BP Amoco, Toray, and Toho, by a federal grand jury that was investigating a possible industry-wide price-fixing conspiracy. Hexcel confirmed its knowledge of widespread anticompetitive practices in its annual Form 10-K disclosures in March 1999. Based upon the overwhelming evidence of Hexcel's knowledge in the record, we hold that Hexcel's claims are time-barred, and we affirm.

## I.  FACTUAL BACKGROUND AND PRIOR PROCEEDINGS

Hexcel manufactures prepreg, a product made from carbon fiber. Prepreg is sold to customers who convert it into various composites for use in a wide variety of end products, including commercial aerospace and military applications. Following an acquisition in 1996, Hexcel also became a producer of carbon fiber. Both before and after Hexcel's acquisition, Hex-

cel was the largest purchaser of carbon fiber in the United States.

On January 29, 1999, Hexcel received a grand jury subpoena from the Antitrust Division of the United States Department of Justice (DOJ). No later than the date of the receipt of that subpoena, Hexcel learned that the DOJ was investigating an alleged industry-wide antitrust conspiracy in the carbon fiber and prepreg industries, and that the targets of the investigation included Hexcel, BP Amoco, Toray, and Toho. Hexcel retained Skadden, Arps, Slate, Meagher & Flom LLP (Skadden) to represent it in the government's investigation. On March 30, 1999, Hexcel filed a Form 10-K with the United States Securities and Exchange Commission, in which it publicly disclosed that it was the "subject" of a federal grand jury investigation into "the pricing of all manufacturers of carbon fiber and carbon fiber prepreg."[1]

On July 29, 1999, direct purchasers of carbon fiber class action plaintiffs filed the first of several federal class action lawsuits in the Central District of California against Hexcel, BP Amoco, Toray, Toho, and others, alleging price-fixing and unlawful market allocation under the Sherman Act, 15 U.S.C. § l. Over the next ten months, seven more direct purchasers of carbon fiber filed suit in federal court alleging the same conspiracy.

On January 24, 2003, Hexcel, BP Amoco, and the other defendants amended a joint defense agreement (JDA) originally executed on April 29, 1999. The amended JDA included a tolling provision of potential claims against each other for the duration of the JDA, terminable upon 30 days written notice. On August 13, 2008, BP Amoco terminated the tolling

---

[1]In 2001, Hexcel's antitrust lawyer from Skadden advised Hexcel that the January 1999 subpoena was likely sufficient to put Hexcel on notice of its own claim, and thus caused the statute of limitations to begin running.

provision as to any claims against it, effective September 12, 2008.

On November 26, 2008, Hexcel filed suit against BP Amoco alleging violations of 15 U.S.C. §§ 1, 15, and 22 by conspiring to fix the price of carbon fiber that BP Amoco sold to Hexce1 during the 1990s. BP Amoco moved to dismiss, contending that Hexcel's lawsuit was time-barred. In support of its motion, BP Amoco pointed to Hexcel's Form 10-K public disclosure on March 30, 1999 that it was the target of a grand jury price-fixing investigation into the carbon fiber market as the latest possible date its claims against BP Amoco accrued. It also claimed that Hexcel knew of the government's investigation into the carbon fiber market before Hexcel made its disclosure, because it received the grand jury subpoena from the DOJ on January 29, 1999.

Hexcel responded by claiming that it did not become aware of its potential claims until after its own diligent inquiry produced enough evidence to support the filing of a lawsuit under Rule 11's "good faith basis" requirement, in February 2001. The parties stipulated that any claims that had accrued before Hexcel's public disclosure were time-barred unless Hexcel could prove that fraudulent concealment prevented it from discovering its claims before that date. The district court denied BP Amoco's motion to dismiss, despite its doubts that Hexcel would be able to prove the timeliness of its claims, on the ground that statute of limitations challenges are generally poorly suited for resolution on the pleadings.

The parties engaged in limited discovery regarding the statute of limitations issue. BP Amoco filed a Motion for Summary Judgment on August 31, 2010. Therein, BP Amoco presented evidence that Hexcel had actual or constructive knowledge of its claims prior to April 11, 1999, the date which BP Amoco contended was the earliest possible date Hexcel's claims could have accrued. BP Amoco argued that if Hexcel had acquired actual or constructive notice of its

claims between April 11, 1999 and the present, then the claims would not be time-barred. However, BP Amoco claimed, if Hexcel had actual or constructive notice of the relevant facts showing antitrust violations before April 11, 1999, then the statute of limitations had lapsed, and the claims were time-barred.

Hexcel countered that its claims were not time-barred because the receipt of the DOJ subpoena came as a complete surprise, and that it had no reason to suspect price-fixing in the carbon fiber industry. The district court rejected this argument on the ground that "BP Amoco [ ] presented enough evidence to persuade the Court to the contrary. Hexcel employees undisputedly knew or had reason to suspect that price-fixing might be occurring in the carbon fiber market before Hexcel received the DOJ subpoena on January 29, 1999." After having received the subpoena and having been alerted to the government's investigation into the carbon fiber market, the district court reasoned, Hexcel immediately began investigating its own conduct and its possible claims against other carbon fiber manufacturers. By March 30, 1999, Hexcel's attorneys had interviewed several of Hexcel's employees, who confirmed the extent of Hexcel's knowledge or suspicions of price-fixing.

On October 13, 2010, the district court entered summary judgment for BP Amoco on the ground that Hexcel had actual or constructive notice of its claims on or before April 10, 1999[2] and, therefore, that the statute of limitations for the filing of Hexcel's alleged antitrust claims had run. Hexcel timely appealed.

[2]As more fully described *infra*, the district court calculated the earliest possible valid accrual date for the running of the statute of limitations as April 10, 1999. In its appellate briefs, BP Amoco also adopted the April 10, 1999 date as the earliest valid accrual date. We also adopt the district court's calculation of the April 10, 1999 date as the earliest possible accrual date for the running of the statute of limitations.

## II.   JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction pursuant to 28 U.S.C. §§ 1291 and 1294. We review de novo the district court's grant of summary judgment. *Conmar Corp. v. Mitsui & Co. (U.S.A.), Inc.*, 858 F.2d 499, 501 (9th Cir. 1988) (citing *T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 629 (9th Cir. 1987)).

Where the moving party has identified the portions of the record that it claims show the absence of any genuine issue of fact, the nonmoving party must set forth by affidavit or otherwise specific facts demonstrating that there is a genuine issue for trial. *T.W. Elec. Serv.*, 809 F.2d at 830. The evidence must be viewed, and inferences from the evidence must be drawn, in the light most favorable to the nonmoving party. *Id.* at 830-31.

## III.   DISCUSSION

### A.   Fraudulent Concealment

**[1]** Antitrust actions must be commenced within four years from the date when the causes of action accrue. 15 U.S.C. § 15b. We do not require a plaintiff to actually discover its antitrust claims before the statute of limitations begins to run. *Beneficial Standard Life Ins., Co. v. Madariaga*, 851 F.2d 271, 274-75 (9th Cir. 1988).

**[2]** A statute of limitations may be tolled if the defendant fraudulently concealed the existence of a cause of action in such a way that the plaintiff, acting as a reasonable person, did not know of its existence. *Hennegan v. Pacifico Creative Serv., Inc.*, 787 F.2d 1299, 1302 (9th Cir. 1986). "[The plaintiff] carries the burden of pleading and proving fraudulent concealment; it must plead facts showing that [the defendant] affirmatively misled it, and that [the plaintiff] had *neither actual nor constructive knowledge* of the facts giving rise to

its claim despite its diligence in trying to uncover those facts." *Conmar*, 858 F.2d at 502 (citing *Rutledge v. Boston Woven Hose & Rubber Co.*, 576 F.2d 248, 249-50 (9th Cir. 1978)) (emphasis added). "A fraudulent concealment defense requires a showing both that the defendant used fraudulent means to keep the plaintiff unaware of his cause of action, and also that the plaintiff was, in fact, ignorant of the existence of his cause of action." *Wood v. Santa Barbara Chamber of Commerce, Inc.*, 705 F.2d 1515, 1521 (9th Cir. 1983).

**[3]** If a defendant proves that the plaintiff had actual or constructive knowledge of the facts giving rise to the claim, the doctrine of fraudulent concealment does not apply. *Id.* "The plaintiff is deemed to have had constructive knowledge if it had enough information to warrant an investigation which, if reasonably diligent, would have led to the discovery of the fraud." *Beneficial Standard Life Ins.*, 851 F.2d at 275. It is enough that the plaintiff "should have been alerted to facts that, following duly diligent inquiry, could have advised it of its claim." *Conmar*, 858 F.2d at 502; *see also GO Computer, Inc. v. Microsoft Corp.*, 508 F.3d 170, 178 (4th Cir. 2007) ("Full knowledge often awaits discovery, and the very notion of 'inquiry notice' implies something less than that").

The district court here determined the earliest date Hexcel's causes of action could have accrued as follows:

- Hexcel filed suit on November 26, 2008, 75 days after the effective date (September 12, 2008) of BP Amoco's termination of the tolling agreement in the JDA.

- The tolling agreement tolled the running of the statute of limitations for the period between January 24, 2003 and September 12, 2008.

- Subtracting the 75 days that expired between the date when BP Amoco's termination of the tolling

agreement became effective, and Hexcel's filing of the complaint, the district court found that a period of three years and 290 days remained within the original four-year statute of limitations.

- The district court then subtracted the remaining three years and 290 days from January 24, 2003, the date the tolling agreement was executed, establishing the earliest date for the accrual of the statute of limitations as April 10, 1999.

If we use this date as a benchmark, and if Hexcel acquired actual or constructive notice of its claims against BP Amoco during the three years and 290 days before January 24, 2003, its claims against BP Amoco would not be time-barred. However, if Hexcel had actual or constructive knowledge of facts giving rise to the claims before April 10, 1999, then the statute of limitations would have lapsed and Hexcel's claims would be time-barred.[3]

We find that substantial evidence shows that Hexcel had constructive, if not actual notice, of its claims long before April 10, 1999. By its own admission, Hexcel knew of two specific anticompetitive agreements between BP Amoco and Toray during the early 1990s: (1) the distribution agreement under which BP Amoco purchased and resold carbon fiber manufactured by Toray; and (2) the licensing agreement

---

[3]We review the district court's analysis of the earliest possible accrual date assuming that the tolling agreement contained in the JDA did not statutorily lapse after four years, on January 24, 2007. BP Amoco argues in the alternative that, under Cal. Civ. Pro. Code § 360.5, the tolling agreement contained in the JDA lapsed as a matter of law four years after its execution, as a result of which, the earliest possible accrual date would be November 27, 2000. We do not reach this question, however, because Hexcel's claim accrued no later than March 30, 1999, before either April 10, 1999 or November 27, 2000, so even if BP Amoco's position were correct, it would not affect our analysis.

under which BP Amoco used Toray technology to manufacture certain carbon fiber products. Indeed, following the abandonment of joint venture negotiations in 1998, Hexcel's concern about BP Amoco's agreements with Toray was so great that it met with its general counsel to discuss the legality of the practices.

**[4]** Moreover, undisputed evidence shows that Hexcel was aware of industry-wide anticompetitive practices throughout the 1990s. Hexcel knew that the executives from BP Amoco, Toray and Toho met once a month in Tokyo to discuss carbon fiber volumes, programs and pricing. In fact, Hexcel may have participated in the very price-fixing conspiracy of which it now complains when it discussed the possibility of "straddling the market" and allocating regional control with Toho. And, Hexcel had knowledge of both the specific agreements and the industry-wide anticompetitive practices throughout the 1990s, more than a decade before the filing of its complaint. The January 29, 1999 grand jury subpoena and the March 1999 Form 10-K disclosures should have served as the final red flags alerting Hexcel of its claims.[4] Accordingly, Hexcel's intimate knowledge of the carbon fiber price-fixing conspiracy, coupled with the grand jury subpoena and the Form 10-K disclosures, proves that Hexcel had constructive, if not actual, knowledge of its claims well before April 10, 1999.

Hexcel argues that *Conmar* compels us to reverse the district court's judgment because there we held that summary judgment is only appropriate "if uncontroverted evidence irrefutably demonstrates that a plaintiff discovered or should have discovered the cause of action but failed to file a timely complaint." *Conmar*, 858 F.2d at 502 (internal quotation marks

---

[4]As noted *supra*, the record even shows that Hexcel's lead antitrust counsel advised it that the grand jury subpoena received on January 29, 1999, was likely sufficient to trigger the running of the statute of limitations on its potential claims against BP Amoco.

and alterations omitted). In *Conmar,* we reversed on the ground that a genuine issue of material fact existed as to whether the plaintiff, Conmar, had constructive notice of its claim sufficient to trigger the running of the statute of limitations. However, Hexcel's attempted analogy to the plaintiff in *Conmar* overlooks critical distinctions between the two cases. In *Conmar*, the only evidence proffered to defeat Conmar's defense of fraudulent concealment consisted of a tangentially related guilty plea, an earlier filed indictment, and minimal press coverage. 858 F.2d at 503-04. There was no evidence, as there is here, that Conmar had earlier knowledge or suspicion of anticompetitive practices from its suppliers, or that Conmar had been subpoenaed to appear before a grand jury investigating the very conduct it alleged against the defendant. Whereas Hexcel was named as a co-defendant with BP Amoco in multiple antitrust suits, Conmar had no relationship with the parties involved in the litigation beyond that of consumer-supplier. In addition, where Hexcel had been advised by its lead antitrust counsel that the subpoena likely triggered the running of the state of limitations, Conmar had never been so counseled. *Id.*

Hexcel's reliance on *Merck & Co. v. Reynolds, Inc.*, 130 S. Ct. 1784 (2010) is equally unpersuasive. *Merck* involved the impact of inquiry notice on the statutory "discovery rule" in federal securities law. 130 S. Ct. at 1797-98. As a preliminary matter, the accrual doctrine for a discovery rule is conceptually distinct from the equitable tolling doctrine in fraudulent concealment cases. *Compare TwoRivers v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1999) (stating that under the federal common law discovery rule, "a claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action"), with *Johnson v. Henderson*, 314 F.3d 409, 414 (9th Cir. 2002) (stating that fraudulent concealment focuses on the actions of the defendant that are calculated to prevent the plaintiff from filing suit within the limitations period). Moreover, to the extent that the general principles of *Merck* do apply, *Merck* is consistent with our rule under *Con-*

*mar*, that the statute of limitations begins to run when a reasonably diligent plaintiff "would have discovered the necessary facts." *Merck*, 130 S. Ct. at 1798.

**[5]** We find Hexcel's position to be more like that of the plaintiff in *Rutledge v. Boston Woven Hose & Rubber Co.* 576 F.2d 248 (9th Cir. 1979). In *Rutledge*, the plaintiff first sued five hydraulic hose manufacturers and producers for price-fixing and price discrimination, in 1969. *Id.* at 249. The 1969 suit was subsequently dismissed, and the dismissal was affirmed on appeal. In 1975, Rutledge sued again, this time naming Boston Woven Hose & Rubber Co. as a defendant. *Id.* The suit was virtually identical to the original suit filed in 1969. In addition to finding that the suit was barred by the doctrine of collateral estoppel, we held that Rutledge's claim was time-barred under the four-year statute of limitations because Rutledge had suspected a price-fixing conspiracy as early as 1965, and further, could have easily discovered its claim through the course of diligent discovery in the 1969 suit. *Id.* at 250. Similarly, Hexcel was named in multiple previous lawsuits as a co-defendant with BP Amoco. Moreover, long predating those suits, Hexcel knew of, and allegedly even participated in, the very price-fixing conspiracy for which it later sued BP Amoco. Given Hexcel's direct involvement as co-defendant with BP Amoco in multiple previous lawsuits for the same conduct of which it now complains, just as in *Rutledge*, no reasonable juror could find that Hexcel lacked sufficient notice of the facts giving rise to its claims. 576 F.2d a 249.

Morever, as we held in *Volk v. D.A. Davidson Co.*, 816 F.2d 1406, 1416 (9th Cir. 1987), the doctrine of fraudulent concealment may not be used to toll the statute of limitations where a plaintiff has received an annual report providing constructive notice of its claims. Here, Hexcel not only received, but authored on March 30, 1999 its Form 10-K detailing its involvement, along with the other major carbon fiber and prepreg manufacturers, as a subject of a federal price-fixing

investigation. The mere receipt of such annual reports in *Volk* was sufficient to show that several plaintiffs had "constructive notice" of their claims. *Id.* at 1416. Here, Hexcel *authored* the Form 10-K report detailing its involvement in a price-fixing investigation in the carbon fiber and prepreg industries. Under the reasoning of *Volk*, we conclude that Hexcel's authorship of its Form 10-K disclosures provided sufficient knowledge to render its fraudulent concealment defense inapplicable.

The district court correctly applied the controlling law under *Conmar* in holding that Hexcel had "actual or constructive knowledge" of its claims on or before April 10, 1999.

> The undisputed facts show that Hexcel had *constructive notice of its claims by April 10, 1999*. Hexcel's receipt of the DOJ subpoena was preceded by a decade of "red flags[,"] which should have excited its suspicion. By the time Hexcel received the grand jury subpoena on January 29, 1999, *there were enough red flags to put Hexcel on notice* of its claims. *See* GO *Computer, Inc.,* 508 F.3d at 172 (affirming grant of summary judgment on statute of limitations grounds where plaintiff had "enough red flags," including an ongoing government investigation, statements from customers, and industry rumors "that a reasonably diligent person would have investigated and acted"). In fact, Hexcel's own antitrust lawyer opined that receipt of the DOJ subpoena was sufficient to put Hexcel on notice of its claims and trigger the running of the statute of limitations.

The record contains uncontroverted evidence that Hexcel possessed constructive knowledge of its claims before April 10, 1999 because, long before then, it "should have been alerted to facts that, following duly diligent inquiry, could have advised it of its claim." *Conmar,* 858 F.2d at 502; *see* GO *Computer, Inc.,* 508 F.3d at 179 ("[I]t bears emphasis that the date of inquiry notice is not a filing deadline. It is only the

date which a cause of action accrues and the four year period allotted by Congress for plaintiff to investigate begins.").

## B. Summary Judgment

To put at issue a defendant's evidence of a plaintiff's knowledge sufficient to trigger the running of the statute of limitations, the plaintiff must produce "at least some 'significant, probative evidence tending to support the complaint,' " to create a genuine issue of material fact. *T.W. Elec. Serv.*, 809 F.2d at 630 (quoting *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968)). "[C]onclusory, self-serving affidavit[s], lacking detailed facts and any supporting evidence," are insufficient to create a genuine issue of material fact. *FTC v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997). Declarations must be made with personal knowledge; declarations not based on personal knowledge are inadmissible and cannot raise a genuine issue of material fact. *See Skillsky v. Lucky Stores, Inc.*, 893 F.2d 1088, 1091 (9th Cir. 1990); *see also* Fed. R. Civ. P. 56(c)(4). The district court may grant summary judgment only if uncontroverted evidence "irrefutably demonstrates that a plaintiff discovered or should have discovered [the cause of action] but failed to file a timely complaint." *Volk*, 816 F.2d at 1417.

**[6]** To refute BP Amoco's proof of Hexcel's constructive knowledge, Hexcel proffered eight declarations of current and former employees containing virtually identical boiler-plate general denials of Hexcel's knowledge of its claim prior to 2001. We hold that the district court did not usurp the role of the jury in considering these declarations because it held, without rejecting or treating them as sham affidavits, that Hexcel's "self-serving, boilerplate declarations" were narrow, conclusory denials, insufficient to create a genuine issue of material fact against BP Amoco's voluminous evidence.

To further refute BP Amoco's evidence of Hexcel's knowledge specifically based on the January 1999 subpoena, Hexcel

proffered a declaration from its lead antitrust counsel in which he declared that his previous advice to Hexcel, that the statute of limitations on its claim likely began to run on January 29, 1999, did not consider the possibility of a fraudulent concealment defense. Such contradictory, self-serving testimony likewise fails to create a genuine issue of material fact. *Publ'g Clearing House*, 104 F.3d at 1171. Indeed, Hexcel's other declarations, such as the Mettenet declaration, regarding whether Hexcel employee, Mike Mettenet, actually knew of the price-fixing rumors, were equally unhelpful concerning the question of whether he subjectively suspected a price-fixing conspiracy. Ultimately, however, we agree with the district court that whether a single executive actually knew about the price-fixing conspiracy fails to counterbalance BP Amoco's substantial evidence that a reasonable plaintiff "should have been alerted to facts that, following duly diligent inquiry, could have advised it of" the price-fixing conspiracy. *Conmar*, 858 F.2d at 502.

Hexcel's argument that the district court drew various inferences in BP Amoco's favor is also unavailing; the district court dealt only with the objective standard of actual or constructive notice, based upon the record evidence before it. Accordingly, the district court did not err in concluding that Hexcel's claims were time-barred and entering summary judgment for BP Amoco because Hexcel failed to proffer evidence sufficient to create any genuine issues of material fact.

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the decision of the district court holding Hexcel's claims are time-barred under the applicable four-year statute of limitations.